## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CHARLES R. BOWLDS,      )
                                      )

      Plaintiff,         )
                                      )

v.                          )      Case No. CIV-19-726-SLP
                                      )

TURN KEY HEALTH, et al.,     )
                                      )

      Defendants.      )

## REPORT AND RECOMMENDATION

Plaintiff Charles Bowlds, a pretrial detainee appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging a violation of his Fourteenth Amendment rights while he was incarcerated in the Logan County Detention Center (LCDC). (ECF No. 19). Before the Court is an alternative Motion to Dismiss or Motion for Summary Judgment (ECF No. 59), filed on behalf of Defendants Damon Devereaux, Logan County Sherriff; Randy Lester, LCDC Jail Administrator; and Andrew Lindsey, formerly a correctional officer and shift supervisor at LCDC, all of whom are sued in their individual capacities. (ECF No. 19:1, 4-6). Mr. Bowlds responded to the motion (ECF No. 66), and Defendants replied (ECF No. 67).[1] The Court should grant Summary Judgment to Defendant Andrew Lindsey and deny summary judgment to Defendants Devereaux and Lester.

---

[1] Mr. Bowlds attempted to file a sur-reply to the LCDC Defendants' reply to his response. To the dispositive motion. (ECF No. 69). Defendants moved to strike Mr. Bowlds' sur-reply, noting that local rules do not allow sur-replies without leave of court. (ECF No. 73). Mr. Bowlds did not seek leave of the court to file the sur-reply. Therefore, the Motion to Strike is granted.

# I.  FACTUAL BASES FOR PLAINTIFF'S CLAIM

Based upon the Special Report, the Amended Complaint, and the evidentiary material appended to the various responses, the following material facts underlying this case are uncontroverted, deemed admitted, or, where disputed, are identified as such, and viewed in the light most favorable to Plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

It is undisputed that Mr. Bowlds' decayed and broken teeth resulted in an exposed nerve and that Mr. Bowlds, who complained of pain at his first appointment with medical staff and regularly thereafter, received treatment from time to time consisting only of Ibuprofen for pain and short courses of Amoxicillin when there were signs of possible infection. Mr. Bowlds complained the Ibuprofen did not alleviate his pain and sought referral to a dentist for extraction of the teeth. (ECF No. 61-6:1-30).

## A.  Contract for Medical Services

Medical services for LCDC inmates are provided by employees of Turn Key Health Clinics, LLC (Turn key), as specified in its contract with the Logan County Sheriff's Office and the Board of County Commissioners for Logan County. (ECF No. 58-12).[2] As it pertains to required specialized dental care from an outside dentist not employed by Turn Key, the contract states such care will, under specified circumstances, be paid for by Turn Key:

> As indicated, the Contractor (Turn Key) shall provide basic oral screening of inmates by on-site medical personnel. Contractor shall arrange emergency dental services **only if its medical director determines that**

---

[2] The Board of County Commissioners for Logan County has not been named as a defendant in this case.

**such care is medically necessary, and under the care of a licensed dentist. Costs for such services shall be included in the maximum liability amount in Section 1.8.**

(ECF No. 58-12:6) (emphasis added). Section 1.8 limits Turn Key's maximum annual combined liability for "pharmaceuticals, off-site medical services, hospitalizations, off-site dental services, specialty services (x-ray, lab, etc.), medical waste disposal, and pharmaceuticals provided to inmates" to $12,000 per year. Any expenses over that amount is the "responsibility of the County." (ECF 58-12:3).

The contract also specifies the extent to which Turn Key is obligated to indemnify LCDC and its employees:

> The Contractor agrees to indemnify and hold harmless the Agency for, from, and against claims, suits, reasonable attorney's fees, damages, or injuries to persons or property or other liabilities arising out of any sole negligence of the Contractor or the Contractor's personnel to properly provide medical care or administration pursuant to the terms of this Contract; including but not limited to claims for violation of privacy, medical malpractice, governmental enforcement or remedial actions, federal or state discrimination claims and tort actions. **Provided that, if a final decision is made by the Agency to deny payment, or instructs the Contractor to deny payment, for any off-site care, specialty care or pharmaceutical service, Contractor will not be required to indemnify Agency for claims related to that decision.**
>
> **Immunity from liability shall not extend to the Agency for the actions, omission of action, neglect, or the prevention of any person from receiving medical care by the Agency or Agency personnel or agents.**

(ECF No. 58-12:3-4).

## B. The LCDC Inmate Handbook and Policies

The LCDC Inmate Handbook, which has Defendant Devereaux's name prominently printed on the title page, outlines the procedure inmates must follow to receive medical

care. (ECF No. 58-10). An inmate must submit a Request for Medical Care to an LCDC staff member who then submits the request to the medical staff on duty. The Turn Key staff member on duty schedules an appointment. (ECF No. 58-10:17). Perhaps because of Turn Key's contractual limitation on the amount it would be required to pay for all medical services for LCDC inmates, LCDC had its own policy regarding payment for "pre-existing" medical conditions. The Inmate Handbook informs inmates that:

> Logan County Detention Center is not responsible for charges from pre-existing conditions.

(ECF No. 58-10:19).

### C. Summary of Mr. Bowlds' Medical Records

Mr. Bowlds' medical records from LCDC demonstrate that he was attended by several Turn Key medical personnel at LCDC including Malachi Martin, APRN-NP; Pashen Bennet, LPN; Debra Stroud, LPN; and Kimberly Laub, LPN. (ECF No. 58-17). None of these medical providers is named as a defendant in this case. Turn Key is named as a defendant, but it is not a party to this motion.

On March 29, 2019, Mr. Bowlds requested mental health treatment. (ECF No. 58-17). Turn Key Medical staff responded to this request the same day and scheduled Plaintiff to see a medical provider five days later on April 3, 2019. On that date, Malachi Martin, APRN-NP, attended Mr. Bowlds. In addition to providing Plaintiff with a mental evaluation, Mr. Martin noted Plaintiff's complaint of tooth pain. In the record, Mr. Martin wrote, "mouth several teeth decayed, gum swelling." He prescribed 800 mg of Ibuprofen for 30 days for dental pain and 1000 mg Amoxicillin for 10 days for treatment of Plaintiff's

potential dental infection. Mr. Martin instructed Mr. Bowlds to follow up as needed ("prn"). (ECF No. 61-6:14; 61-7:1-2).

One week later, on April 10, 2019, Mr. Bowlds complained of mental problems and was again attended by Mr. Martin. Mr. Martin prescribed Trileptal to address Mr. Bowlds' mood disorder. After one dose, however, Mr. Bowlds reported a bad headache, and the prescription was discontinued. (ECF No. 61-7:2).[3]

The next medical record summarizing Mr. Martin's examination of Mr. Bowlds is dated January 1, 2020. After noting Mr. Bowlds was refusing his morning medication, Mr. Martin described Mr. Bowlds' left upper molar as "decayed, cracked, exposed nerve." Mr. Martin wrote in the Orders to "schedule dentist for extraction." The order is crossed through, however, with no written explanation. (ECF No. 61-6:5). According to Mr. Martin, Mr. Bowlds declined the opportunity to go to an outside dentist because he would be required to pay for the treatment himself. (ECF No. 61-7:4). Mr. Bowlds disputes Mr. Martin's account stating he "never refused the offer to be seen by/or go to a Dentist." (ECF No. 66:23).

Mr. Martin states he later received a telephone call from a nurse at LCDC reporting that Mr. Bowlds was once again requesting to see a dentist and complaining of ongoing dental pain. The nurse told Mr. Martin that she had seen signs of potential dental

---

[3] As discussed in further detail below, Defendant Devereaux was apparently confused about the reason Mr. Martin prescribed Trileptal for Mr. Bowlds. Although the medical record specifically states the medication was prescribed for "**mood disorder,**" Defendant Devereaux apparently misapprehended this fact, concluding that Trileptal was a "'nerve pain' type [of medication] that [Mr. Bowlds] did not like." (ECF No. 66-1:1). Mr. Bowlds states in his Response to the motion that he does not remember being prescribed Trileptal. (ECF No. 66:17).

infection. Mr. Martin instructed the nurse to again provide Mr. Bowlds with prescriptions for Amoxicillin and Ibuprofen. (ECF No. 61-7:4-5).

On June 11, 2020, Mr. Bowlds submitted a Sick Call Request Form asking to see a dentist, reporting that his "tooth broke again" and that he was suffering from serious pain. (ECF No. 61-8: 36). The nurse on duty, Pashen Bennet, scheduled a sick call that same day and attended him in the clinic. Nurse Bennet noted a "broken tooth," assessed Mr. Bowlds as being in "moderate distress" and notified a provider at Turn Key that Mr. Bowlds' severe tooth pain was not relieved by Ibuprofen. The Turn Key provider entered orders to "increase"[4] the strength of the Ibuprofen dosage to 800 mg for 90 days as needed. Nurse Bennet also stated she had "[a]dvised inmate the county will not send inmate to the dentist unless his family or himself pays for it first. Inmate still seen for his broken tooth." (ECF No. 61-8:36-37).

### D. Administrative Relief Sought

To receive medical care, inmates of LCDC are not required to seek administrative relief, but neither are they precluded from doing so. The steps of the LCDC grievance procedure are listed in the LCDC Inmate Handbook. (ECF No. 68-10:13-14). The LCDC Inmate Handbook outlines the procedure for inmates to file requests to staff and grievances. (ECF No. 58-10:13-14). For an issue involving medical or dental care, the handbook specifies "[a] grievance concerning medical or mental health issues is forwarded directly to the health care nurse and a copy to the Detention Center Administrator." (ECF No. 58-10:14).

---

[4] It appears from earlier medical records that he had always been prescribed 800 mg of Ibuprofen.

When he could not obtain relief from Turn Key personnel, Mr. Bowlds turned to the LCDC grievance procedure. In April and June 2019, Mr. Bowlds filed a series of requests to staff and grievances addressed to one or other of the three LCDC Defendants, each time describing his persistent, acute pain and asking that LCDC Defendants arrange for him to be attended by an outside dentist so that the decayed and broken teeth could be extracted.

Each of the LCDC Defendants signed the administrative request directed to him. Thus, all three LCDC Defendants were aware Mr. Bowlds was complaining of tooth pain, but none took steps to change the course of medical treatment provided by Turn Key or to secure an appointment with a dentist for extraction of the painful teeth.

## II.    ISSUE PRESENTED

Mr. Bowlds contends the LCDC defendants, sued in their individual capacities only, were deliberately indifferent to his serious dental needs—a nerve root exposed by decayed and broken teeth. Mr. Bowlds contends the exposed nerve root caused him severe pain while the effective treatment—extraction of the teeth by a dentist—was delayed for over a year.

The LCDC Defendants contend Mr. Bowlds consistently received some sort of treatment and that, therefore, his claim boils down to a disagreement with medical staff as to the treatment rendered and does not rise to the level of a constitutional violation. Further, the LCDC Defendants contend they did not personally participate in the alleged constitutional violation because medical and dental care is provided by Turn Key staff.

## III.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Because this Court has considered materials attached to the court-ordered Special Report, the Court must treat the LCDC Defendants' motion as a motion for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Mr. Bowlds was informed that he could not rely on his pleadings alone, should defendants file a dispositive motion supported by affidavits and/or other documents, and he was given the opportunity to respond accordingly. (ECF No. 27:3-4).

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *Id.* (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). In considering a motion for summary judgment, this Court draws all reasonable inferences in favor of the nonmoving party. *See Curtis v. Oklahoma City Public Sch. Bd. of Ed.*, 147 F.3d 1200, 1214 (10th Cir. 1998).

## IV.  ANALYSIS

Mr. Bowlds' claim challenging the constitutionality of his dental care while incarcerated as a pretrial detainee arises under the due process clause of the Fourteenth Amendment. When courts consider claims that pretrial detainees have been denied constitutionally adequate medical care, however, those claims are analyzed under the same "deliberate indifference" standard applied to Eighth Amendment claims asserted by convicted prisoners. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

### A.  Eighth Amendment Requirements for Medical Care

The Eighth Amendment, or in this case the due process clause, "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517 (1984)).

The Supreme Court first recognized claims for deliberate indifference to a prisoner's medical needs in *Estelle v. Gamble*, 429 U.S. 97 (1976). The Court held that prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Id.* at 104 (internal citation and quotation marks omitted).

For over forty years, the Tenth Circuit Court of Appeals has recognized that "dental care is one of the most important medical needs of inmates." *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980). Other jurisdictions, too, recognize "the [E]ighth [A]mendment

requires that prisoners be provided with a system of ready access to adequate dental care." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). *See also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (principle that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment applies equally to dental care); *Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018) (inmate's right to treatment for serious and painful dental conditions has been clearly-established for more than three decades); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983."); *Carlucci v. Chapa*, 884 F.3d 534, 539 (5th Cir. 2018) (allegations of severe physical pain and denial of recommended dental treatment are sufficient to state a plausible claim for relief).

### 1. Proof of Deliberate Indifference

To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must present sufficient evidence to satisfy a two-prong test. First, the plaintiff must satisfy an objective component showing that the deprivation suffered was "objectively sufficiently serious" to implicate Eighth Amendment protections. Second, the plaintiff must demonstrate that the defendant had a sufficiently culpable state of mind or was "deliberately indifferent" to the inmate's safety. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). "Deliberate indifference" is defined as knowing of and disregarding an excessive

risk to an inmate's health or safety. *Farmer*, 511 U.S. at 827; *Estelle*, 429 U.S. 97, 104–05.

### a. The Objective Prong

The objective component of the aforementioned test is satisfied "if the condition has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotations omitted). This case involves both types of evidence.

The Tenth Circuit has recently reiterated that the objective component is satisfied where a prisoner demonstrates he suffered unnecessary pain associated with *delay* in receiving medical care. *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (officer's delay in getting prisoner to detention center which resulted in several hours of excruciating pain associated with his shoulder injury was sufficient to satisfy the objective prong of the deliberate indifference test) (citing *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) ("A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused . . . unnecessary pain[.] Even a brief delay may be unconstitutional.")); *see also Sealock v. Colo.*, 218 F.3d 1205, 1210 n.5 (10th Cir. 2000) (noting that, although defendant prison official did not cause inmate's heart attack, "there is factual evidence from which a jury could conclude that the delay occasioned by his inaction unnecessarily prolonged appellant's pain and suffering")); *see also Stack v. McCotter*, 79 F. App'x 383, 389 (10th Cir. 2003) ("Under circuit precedent, pain itself can

be considered substantial harm resulting from delay, giving rise to a cause of action for deliberate indifference.").

Mr. Bowlds alleges he suffered severe pain from the nerve exposed by his decayed and broken teeth, and the medical record supports the description of his teeth. Moreover, Mr. Bowlds suffered this pain—not for hours or days—but for months. Under Supreme Court and Tenth Circuit precedent, the facts in this case are sufficient to demonstrate that Mr. Bowlds' pain-producing dental problem was objectively sufficiently serious to satisfy the objective prong of the test for deliberate indifference to necessary dental care.

### b. The Subjective Prong

To satisfy the subjective component of the test for deliberate indifference to his serious dental pain, Mr. Bowlds must demonstrate the LCDC Defendants "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,'" *Sealock* 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)), or as in *Sealock*, they knew of and disregarded Mr. Bowlds' excessive pain. Each LCDC official must have been aware of "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Whether a prison official had the requisite knowledge of an inmate's severe pain is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* at 842 (internal citations omitted). The Tenth Circuit has stated that "if a risk is obvious so that a reasonable man

would realize it, we might well infer that [the defendant] did in fact realize it." *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Through use of the administrative process, Mr. Bowlds notified the LCDC Defendants that he was in pain from an exposed nerve caused by his broken and decayed teeth. A rational jury could conclude that the pain-producing potential caused by an exposed nerve in one's gum would be obvious even to a lay person. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (inmate presented evidence that he suffered extreme pain from loose and infected teeth, constituting a need for medical attention that would have been obvious to a layperson).

Moreover, none of the LCDC Defendants took steps to ensure Mr. Bowlds' pain-producing dental problem was addressed by a dentist who could have extracted his teeth. But their liability as individual defendants depends in part on whether any of the LCDC Defendants had the authority to grant Mr. Bowlds' request to be sent to a dentist, even though Turn Key personnel had repeatedly said his dental condition was not an emergency and that he would be taken to a dentist only if he paid for the dental services himself. So the question of each defendant's liability for deliberate indifference to Mr. Bowlds' serious medical needs depends in part on the nature of his participation in denying Mr. Bowlds dental treatment.

### B. Personal Participation

The LCDC Defendants argue entitlement to summary judgment based on their alleged non-participation in the constitutional violation. As a group, they contend they relied on Turn Key's decision that Mr. Bowlds' did not require emergency care. In his

response, Mr. Bowlds contends the LCDC Defendants personally participated in the alleged constitutional violation by denying his requests to staff and grievances, in all of which he was seeking referral to a dentist for extraction of the broken, decayed teeth causing him acute pain. (ECF No. 66:38-39).

The Tenth Circuit recently summarized and restated the current law governing the "personal participation" that must be demonstrated to hold a defendant liable for a constitutional violation:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[ ] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019). Thus, this Court must necessarily examine the actions of the individual LCDC defendants to determine the extent of their participation in delaying or refusing to provide the dental treatment that would have relieved Mr. Bowlds' pain. Each LCDC defendant has provided the Court with

a "Declaration" stating the extent of his knowledge of and personal involvement with Mr. Bowlds' dental care.

### 1. Defendant Jordan Lindsey

Defendant Lindsey states in his Declaration that he was employed as a detention officer, shift supervisor and lieutenant at LCDC from February 1, 2017, to February 21, 2020. (ECF No. 58-8:1). On June 3, 2019, Mr. Bowlds sent an Offender Grievance Report to Defendant Lindsey requesting an emergency visit to an outside dentist. Defendant Lindsey responded:

> Your tooth is a pre-existing condition that neither medical nor jail is obligated to treat. If you can afford to pay for the costs of the extraction, then we will schedule and transport you to the doctor.

(ECF No. 58-18:12). Clearly, Defendant Lindsey answered Mr. Bowlds' grievance, by parroting the jail policy as stated in the LCDC Inmate Handbook:

> Logan County Detention Center is not responsible for charges from pre-existing medical problems.

(ECF No. 58-10:19). It is undisputed that when Mr. Bowlds arrived at LCDC, his tooth decay was well underway and only became worse as time passed without treatment from a dentist. Defendant Lindsey states in his Declaration that he consulted with Turn Key medical staff before he answered Mr. Bowlds' grievance. He was informed, he states, that Mr. Bowlds' dental issue was "a pre-existing condition and that any treatment beyond what had already been provided was not medically necessary and would be elective in nature." (ECF No. 58-8:1).

"[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under §

1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Whitington v. Ortiz*, 307 Fed. App'x. 179, 193 (10th Cir. 2009); *Larson v. Meek*, 240 Fed. App'x. 777, 780 (10th Cir. 2007). *See also Requena v. Roberts*, 893 F.3d 1195 1216 (10th Cir. 2018) (The "mere response and denial of [an inmate's] grievance are insufficient to establish the requisite personal participation under § 1983.").

For the denial of a grievance to demonstrate "personal participation" in a constitutional violation, the denial of the grievance, itself, must lead directly to the constitutional violation. *See Brooks v. Colorado Dep't of Corrs.*, 715 F. App'x 814, 821 (10th Cir. 2017) (distinguishing a prison official's mere "rubber-stamp" denial of a grievance from the denial of a grievance by the only person who could provide the relief sought, and finding that in the latter instance, the inmate had stated an affirmative link between the denial of the grievance and the alleged constitutional violation).

In addition to relying on Turn Key personnel's statements, regarding lack of medical necessity, Defendant Lindsey states that LCDC Staff "has no oversight or control over whether care is deemed medically necessary or what care an inmate receives." *Id.* Mr. Bowlds has produced no evidence to contradict these statements. Defendant Lindsey was a detention officer. Nothing in the record suggests that Defendant Lindsey played any part in creating the policy which, he believed, precluded Bowlds from getting an appointment with a dentist without prepayment of the associated fees.

Mr. Bowlds has not demonstrated that Defendant Lindsey, a detention officer—albeit in a supervisory position—had anything to do with creating LCDC policy. Nothing in

the record indicates Defendant Lindsey was vested with the authority to override LCDC policy regarding non-life-threatening treatment of pre-existing conditions.[5]

Because Defendant Lindsey's denial of Mr. Bowlds' grievance was not the sole cause that prevented him from getting dental treatment, Defendant Lindsey's denial of the grievance does not rise to the level of personal participation in the constitutional violation. Thus, Defendant Lindsey is entitled to summary judgment.

### 2. Defendant Damon Devereaux

Defendant Devereaux stated in his Declaration that, as Sheriff of Logan County, he is "solely responsible for supervising the overall operation of the LCDC and its staff as well as the policies, procedures and practices of the LCDC." (ECF No. 58-4:1).

Mr. Bowlds submitted two requests to staff to Defendant Devereaux, one describing the "hole in one tooth completely to the nerve, and another that was knocked loose needing to be pulled." (ECF 58-18:8). Defendant Devereaux states that after consulting with Turn Key medical staff at LCDC, he answered the two requests to staff from Mr. Bowlds. (ECF No. 58-4:3). Defendant Devereaux apparently offered only one response, in a type-written document under his letterhead. Mr. Bowlds has attached Defendant Devereaux's answer to his requests to staff as an exhibit to his response to the LCDC Defendants' dispositive motion. Defendant Devereaux stated:

---

[5] The handbook does provide, however, that inmates can "notify any staff member of a medical emergency." (ECF No. 58-10:17). "Medical emergency" is not defined in the handbook, however, and Defendant Lindsey, having been informed by medical staff that Mr. Bowlds was seeking non-medically necessary treatment for a pre-existing condition was reasonable in his assumption that Mr. Bowlds was not presenting with an emergency situation.

> According to your records, you have been offered a "nerve pain" type medicine that you did not like.[6] You are now being prescribed ibuprofen for discomfort. It's my understanding this isn't an issue of infection which would be a serious concern instead an exposed nerve. An exposed nerve is uncomfortable but not life threatening.

(ECF No. 66-1). Of course, whether a pain-producing medical issue is life threatening or not, delaying or denying medical treatment to alleviate the pain can, itself, rise to the level of a constitutional violation. *See supra* at 11-12.

Unlike Defendant Lindsey, Defendant Devereaux was both responsible for the LCDC policy that all parties involved—apparently even Turn Key personnel—relied upon to justify denying Mr. Bowlds the dental treatment that would have resolved his pain. Turn Key personnel repeatedly told Mr. Bowlds he could be attended by a dentist only if he, himself, paid for the treatment; yet no such language is to be found in the contract between Turn Key and LCDC.[7] As noted above, the policy requiring inmates to pay for medical bills for treatment of pre-existing conditions is that of LCDC and Defendant Devereaux.

But Defendant Devereaux, as sheriff, had a constitutional duty to provide inmates with conditions of confinement passing Eighth Amendment muster. That duty includes supervision of Turn Key personnel who consistently denied Mr. Bowlds the dental treatment he needed to alleviate his pain. A rational jury could conclude that Defendant

---

[6] As discussed above, this statement is simply wrong. Sheriff Devereaux is mistakenly referring to a medication prescribed for Mr. Bowlds' mood disorder. The medical records do not support a conclusion that Mr. Bowlds was offered anything other than Ibuprofen for his tooth pain.

[7] It is possible, of course, that Turn Key had an unwritten policy or custom of denying dental care unless the inmate paid for the treatment. Both Turn Key and Defendant Devereaux had a pecuniary interest in forcing Mr. Bowlds to pay for his dental treatment.

Devereaux's denial of Mr. Bowlds' requests to staff seeking the outside dental care that would have relieved his pain demonstrated Defendant Devereaux's personal participation in a constitutional violation.

A reasonable jury could also find Defendant Devereaux liable in his individual capacity for civil rights violations based on his supervisory duties covering all employees and policies at LCDC. *See Burke v. Regalado*, 935 F.3d 960, 996 (10th Cir. 2019) (sheriff properly sued in individual capacity based on supervisory liability).

Section 1983 does not authorize *respondeat superior* liability for a supervisor based *solely* on the actions of his subordinates. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Three elements must be established to demonstrate an individual defendant is liable for constitutional violations based on his supervision of subordinates:

> [T]he three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities [are]: (1) personal involvement[,] (2) causation, and (3) state of mind.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution (internal quotation marks and citations omitted)).

To satisfy the first element, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405,

435 (10th Cir. 2014) (quotations omitted). The plaintiff can show such a link by establishing "the [supervisor] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy," *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011), or "the establishment or utilization of an unconstitutional policy or custom," *Dodds*, 614 F.3d at 1199, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights. In this case, Defendant Devereaux has affirmatively stated he is "solely responsible for supervising the overall operation of the LCDC and its staff as well as the policies, procedures and practices of the LCDC." *See supra* at 17.

> The second element requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.

*Estate of Booker*, 745 F.3d at 435 (quotations omitted).

As to the third element,

> [I]n the context of a Fourteenth Amendment claim involving injuries to an inmate, a plaintiff can establish the requisite state of mind by showing that [a supervisor] acted with deliberate indifference.

*Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (quotations omitted).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

> [A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff.

*Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (quotations omitted).

Because Defendant Devereux promulgated the policy requiring pre-payment of expenses incurred by providing inmates medical care for pre-existing conditions, a rational jury could conclude this policy set in motion the denial of constitutionally adequate dental care for Mr. Bowlds.

It is therefore recommended that Defendant Devereaux's motion for summary judgment be denied.

### 3. Defendant Randy Lester

In his Declaration, Defendant Randy Lester identifies himself as the LCDC Jail Administrator, a position in which he is "responsible for the day-to-day operations of the LCDC." (ECF No. 58-7:1). Mr. Bowlds sent one request to staff and one grievance to Defendant Lester complaining of the dental care Turn Key was providing. Defendant Lester responded to Mr. Bowlds' request to staff by stating the obvious: that Mr. Bowlds had been attended by the medical staff and was receiving *some* treatment. (ECF No. 58-18:5). To the grievance, Defendant Lester responded that the medical staff had determined Mr. Bowlds' current treatment was "as far as we can go unless your situation gets worse." (ECF No. 58-18:11).

Defendant Lester's Declaration states that "staff at LCDC has no oversight or control over whether care is deemed medically necessary or what care an inmate receives." (ECF No. 58-7:2). But as the staff member responsible for the day-to-day operations of LCDC, Defendant Lester cannot turn a blind eye to possible unconstitutional conditions of confinement—in this case lack of proper dental care. Even though Defendant Lester may not be responsible for the policy leading to the denial of effective dental care,

at the very least he could have discussed the matter with Defendant Devereaux and possibly apprised Defendant Devereaux of the actual facts regarding Mr. Bowlds' dental care. A rational jury could determine that Defendant Lester had the duty to follow through with determining whether Turn Key personnel were delivering constitutionally adequate dental care for an obvious pain-producing condition. Thus, Defendant Lester is not entitled to summary judgment.

## V.      RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Defendants' Motion to Strike Mr. Bowlds' sur-reply **(ECF No. 73)** is **GRANTED**. For the reasons discussed in this Report and Recommendation, the Court recommends that Defendant Jordan Lindsey's motion for summary judgment **(ECF No. 59)** be **GRANTED**. It is further recommended that the motion for summary judgment **(ECF No. 59)** be **DENIED** as to Defendants Devereaux and Lester. It is further recommended that upon adoption of this recommendation, Plaintiff's Motion for Appointment of Counsel **(ECF No. 47)** should be **GRANTED**.

The parties are hereby advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **March 11, 2021**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VI. STATUS OF THE REFERRAL

This Report and Recommendation terminates the referral.

ENTERED on February 22, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE