**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

CHARLES BOWLDS,                    )
                                  )
      Plaintiff,                  )
                                  )
v.                                )          Case No. CIV-19-726-SLP
                                  )
TURN KEY HEALTH, et al.,          )
                                  )
      Defendants.                 )

**O R D E R**

      Before the Court is the Report and Recommendation (R&R) [Doc. No. 83] issued by United States Magistrate Judge Shon T. Erwin pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff, a state pretrial detainee appearing pro se, alleges deliberate indifference to his dental needs while incarcerated at the Logan County Detention Center (LCDC) in violation of his constitutional rights under 42 U.S.C. § 1983.[1]

      Judge Erwin recommends granting summary judgment in favor of Defendant Andrew Lindsey, a former correctional officer and shift supervisor at LCDC. Judge Erwin further recommends denying summary judgment in favor of Defendants Damon Devereaux, Logan County Sheriff and Randy Lester, LCDC Jail Administrator. Plaintiff timely filed an objection [Doc. No. 89] to the R&R and Defendant Lindsey timely filed a response [Doc. No. 91]. Defendants Devereaux and Lester also jointly filed an objection

---

[1] At all times pertinent to the claims raised, Plaintiff was a pretrial detainee at LCDC. During the course of these proceedings, Plaintiff filed a Notice of Change of Address [Doc. No. 92] demonstrating he is currently incarcerated at James Crabtree Correctional Center, an Oklahoma Department of Corrections facility. Thus, it appears Plaintiff is no longer a pretrial detainee.

[Doc. No. 87] to the R&R.[2]  Accordingly, the Court must make a de novo determination of those issues specifically raised by the objections, and may accept, modify, or reject the recommended decision.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Having conducted this de novo review, the Court concurs with the Magistrate Judge's analysis as to Defendants Devereaux and Lester and ADOPTS the Report and Recommendation.  But the Court DECLINES to ADOPT the Report and Recommendation as to Defendant Lindsey.

## I.    <u>Background</u>

Plaintiff's claims arise out of his pretrial detention at the LCDC beginning in March, 2019.  Plaintiff alleges he was denied dental care in deliberate indifference to his serious medical needs.  Sheriff Devereaux, Jail Administrator Lester, and former lieutenant Lindsey are named as Defendants in their individual capacity.

The record shows that Plaintiff had a pre-existing dental condition at the time he was received at LCDC.  Specifically, Plaintiff's intake records indicate he had a hole in one tooth.  Plaintiff's initial medical records, within days of his reception, show that a Turn Key medical provider noted that Plaintiff had several decayed teeth and gum swelling and was suffering from pain.[3]  Plaintiff was prescribed 800 mg Ibuprofen for 30 days and Amoxicillin 1000 mg for 10 days.  *See* Doc. No. 61-6 at 14.

---

[2] Additionally, all three Defendants jointly filed a Notice of Supplemental Authority [Doc. No. 88].

[3] Turn Key is also a named Defendant and was the medical provider at LCDC during the time period relevant to Plaintiff's claims.  Plaintiff's claims against Turn Key are not the subject of the Report and Recommendation and are not presently before the Court.

Shortly thereafter, Plaintiff sought administrative relief from LCDC staff – specifically Defendants Lester, Devereaux and Lindsey. Plaintiff's claims against these Defendants arise from their alleged enforcement of an unconstitutional policy or practice at LCDC and/or their personal participation in the delay or denial in providing dental care to Plaintiff. In seeking administrative relief, Plaintiff complained that Turn Key told him that "per policy" he could not see a dentist until he completed a certain treatment regime that would take up to ninety days. Plaintiff stated he was in chronic pain and that the treatment provided was ineffective.

From April 2019 through August 2020, Plaintiff periodically continued to seek dental treatment. In the interim, he instituted this action on August 9, 2019.

On more than one occasion Plaintiff was told that treatment by a dentist was not medically necessary and, therefore, he could see a dentist only if he could pay for the treatment. *See, e.g.* Doc. No. 61-8 at 36-37 (notation in medical record advising Plaintiff that "the county will not send inmate to dentist unless his family or himself pays for it first"). Ultimately, a "change in condition" caused Turn Key personnel to refer Plaintiff to a dentist for a tooth extraction. *See* Martin Decl. [Doc. No. 67-1]. The exact date of the extraction is not included in the record. But the referral occurred in August 2020, approximately sixteen months after Plaintiff first requested that he be seen by a dentist. *See id*.

The Magistrate Judge granted summary judgment in favor of Defendant Lindsey concluding that Defendant Lindsey's mere denial of a grievance was insufficient to show his personal participation in any violation of Plaintiff's constitutional rights. Plaintiff

3

objects to this finding and contends Defendant Lindsey did more than merely "rubber stamp" a grievance denial.

The Magistrate Judge denied summary judgment in favor of Defendant Sheriff Devereaux and Defendant Jail Administrator Lindsey.  As to Defendant Devereaux, the Magistrate Judge found he was responsible for the implementation of a policy at LCDC that, a rational jury could conclude, "set in motion the denial of constitutionally adequate dental care for Mr. Bowlds."  R&R at 21.  As to Defendant Lester, the Magistrate Judge found that although he was not "responsible for the policy leading to the denial of effective dental care" he should have further "discussed that matter with Defendant Devereaux" and that a "rational jury could conclude that Defendant Lester had the duty to follow through with determining whether Turn Key personnel were delivering constitutionally adequate dental care for an obvious pain-producing condition."  *Id.* at 22.

All three Defendants claim they are entitled to summary judgment because they reasonably relied on the advice of Turn Key medical personnel in denying Plaintiff's requests for administrative relief.  They argue medical personnel deemed treatment by a dentist was not medically necessary.[4]  Defendants further contend that the denial of administrative relief alone is insufficient to demonstrate their personal participation in any alleged constitutional violation.

---

[4] As the Magistrate Judge noted, a provision in the contract between Turn Key and LCDC provides that Turn Key, as contractor, "shall arrange emergency dental services only if its medical director determines that such care is medically necessary, and under the care of a licensed dentist."  R&R at 2-3 (citing Doc. No. 58-12 at 6).

## II.    <u>Governing Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).  An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.*  In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319, 1323 (2021).

## III.    <u>Discussion</u>

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Crowson v. Wash. Cty.*, 983 F.3d 1166, 1178 (10th Cir. 2020 (internal quotation marks and citation omitted)).  The two-part Eighth-Amendment inquiry governs. *Id.*  Objectively, the deprivation must be sufficiently serious "to constitute a deprivation of a constitutional dimension"; and subjectively, a prison official must know of and disregard an excessive risk to inmate health or safety.

In addition to this two-part inquiry, "[p]ersonal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d, 1260, 1262-63 (10th Cir. 1976); *see also Pemberton v. Patton*, 673 F. App'x 860, 867 (10th Cir. 2016). "The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)). But the Tenth Circuit has cautioned that it does not "mean to rule out the possibility of liability where the officer denying a grievance has an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it." *Arocho v. Nafziger*, 367 F. App'x 942, 955 (10th Cir. 2010).

The parties' objections to the R&R do not challenge the Magistrate Judge's finding that Plaintiff's pain-producing dental problem was sufficiently serious to satisfy the objective prong of the deliberate indifference analysis. *See* R&R at 11-12. Thus, the Court's analysis is focused on the subjective prong and the issue of personal participation.

## A.    Defendant Lester

The record shows that Defendant Lester was the first to respond to Plaintiff's administrative requests to LCDC staff. Defendant Lester responded to one Request to Staff and one Grievance.

On April 10, 2019, Plaintiff submitted a Request to Staff directed to Defendant Lester. The relief Plaintiff sought in the Request to Staff was an "emergency dental visit." In the Request to Staff, Plaintiff challenged the treatment offered by the healthcare provider

and the "policy" limiting his treatment options.  He stated that his "chronic pain" could not be cured by "continuously administering" the Ibuprofen and Amoxicillin.  He referenced the Inmate Handbook which permits both "dental visits" and "emergency" visits to the clinic.[5]  And he stated that "[d]enial of access to medical is a federal civil rights violation." Request to Staff [Doc. No. 58-18] at 5-7.[6]

Defendant Lester's response is dated April 16, 2019.  *See id*. at 5.  Defendant Lester told Plaintiff that he had not been denied treatment for his dental condition but had seen the medical provider who had provided treatment.  *Id*.

In a Declaration submitted with the Special Report [Doc. No. 58], Defendant Lester states that "[f]or *all Requests to Staff or Offender Grievances concerning medical issues* Turn Key Health staff are consulted prior to providing a response to the inmate."  Lester Decl. [Doc. No. 58-7], ¶ 10 (emphasis added).  He further states that: "[s]taff at LCDC ha[ve] no oversight or control over whether care is deemed medically necessary or what care an inmate receives."  *Id*., ¶ 11.  But in his Declaration, Defendant Lester makes no

---

[5] The Inmate Handbook states the following regarding available medical services:

> Dental Services: Dental services are designed to alleviate pain only.  If necessary, teeth will be pulled and antibiotics and pain management provided.  Restorative services, fillings, root canals, caps, etc, will not be offered.

*See* Doc. No. 58-10 at 19.

[6] At the time Plaintiff submitted the Request to Staff, he had been seen one week prior, on April 3, 2019, and had been prescribed Ibuprofen, 800 mg for thirty days and Amoxicillin, 1000 mg for 10 days.

reference to any consultation he undertook prior to responding to Plaintiff's April 10, 2019 Request to Staff.[7]

On May 27, 2019, Plaintiff submitted a Grievance to Defendant Lester.  The relief Plaintiff sought in the Grievance was a response by Sheriff Devereaux to Plaintiff's April 26, 2019 Request to Staff.  Sometime between May 27, 2019 and May 30, 2019, Defendant Lester responded[8] advising Plaintiff that both the Sheriff and the medical staff had responded and that the medical treatment he was receiving was "as far as we can go unless your situation gets worse."  *See* Doc. No. 58-18 at 11.

In his Declaration, addressing the Grievance, Defendant Lester states: "[p]rior to providing a response to Mr. Bowlds['] Offender Grievance Form dated May 27, 2019, I consulted with Turn Key Medical Staff of the LCDC . . . to confirm that the treatment he was being prescribed was the extent reasonably necessary unless his condition worsened." Lester Decl. [Doc. No. 58-7], ¶ 15.  As indicated, he makes no similar statement that he consulted with Turn Key medical staff prior to responding to the Request to Staff.

Defendant Lester challenges the Magistrate Judge's finding that his denial of the Request to Staff and Grievance demonstrate the requisite personal participation to support § 1983 liability.  Defs.' Obj. at 9-11.  Specifically, the Magistrate Judge relied on Defendant Lester's role as LCDC Jail Administrator finding that he was, "responsible for

---

[7] In contrast, as discussed infra, Defendant Lester specifically noted a consultation with medical prior to responding to Plaintiff's May 27, 2019 Grievance.

[8] The response is undated.  Plaintiff submitted the response on May 27, 2019 and Plaintiff states that he received Lester's response on May 30, 2019.  *See* Compl. [Doc. No. 1-1] at 2.

the day-to-day operations of the LCDC." R&R at 21. The Magistrate Judge found that in this role, Defendant Lester "cannot turn a blind eye to possible unconstitutional conditions of confinement – in this case lack of proper dental care." *Id*. The Magistrate Judge acknowledged Defendant Lester may not be responsible for the policy leading to the denial of effective dental care, but he had a "duty to follow through with determining whether Turn Key personnel were delivering constitutionally adequate dental care for an obvious pain-producing impairment." *Id*. at 23.

Defendant Lester argues that his response to Plaintiff's Request to Staff "showed that he had consulted with and was reasonably relying on TKH medical staff's professional opinion." Obj. at 9. Defendant Lester further argues that "his denial of Bowlds' grievance [was not] the *sole cause* that prevented Bowlds from receiving any dental treatment, as is required for denial of a grievance to be a sufficient personal participation in an alleged constitutional violation." *Id*. at 9-10 (emphasis added). With respect to the latter argument, Defendant Lester cites *Brooks v. Colo. Dep't of Corr.*, 715 F. App'x 814, 821 (10th Cir. 2017).

In unpublished decisions, the Tenth Circuit has held that prison officials may reasonably rely on the judgment of prison medical staff in responding to grievances and such reliance "*negates* rather than supports liability." *Arocho*, 367 F. App'x at 956; *accord*, *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013). As a corollary, "unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs." *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 404 (10th Cir. 2009).

As set forth, Defendant Lester states in his Declaration that as a matter of practice at LCDC, Turn Key staff are consulted prior to responding to any inmate request to staff or grievance concerning a medical issue.  Defendant Lester further states that he consulted with medical staff prior to responding to Plaintiff's April 26, 2019 Grievance.  Defendant Lester provides no information about the date on which he consulted medical staff, who he consulted, or what he was told.  The reasonableness of his reliance, therefore, cannot be determined on the present record.

Moreover, the Court does not concur with Defendant's interpretation of *Brooks* as requiring the denial of a grievance to be the "sole cause" of the constitutional violation in order to show personal participation.  Obj. at 10.[9]  The record shows Defendant Lester did more than simply deny the grievance.  By his own admission, he consulted with medical staff.  Under these circumstances, Defendant Lester has failed to demonstrate he is entitled to judgment as a matter of law in his favor.

---

[9] In *Brooks*, the prisoner submitted a grievance asking for a special meal pass due to his alleged need for a gluten-free diet.  Defendant Russell denied the grievance finding the request was unreasonable.  The court held this evidence "linked Ms. Russell to the act underlying the claim (the refusal of a special meal pass)."  *Id.*, 715 F. App'x at 819.  The court distinguished its holding in *Gallagher* that "'the denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'"  *Id.* (quoting *Gallagher*, 587 F.3d at 1069).  The court noted that in *Gallagher*, "the claim was simply that defendants had rubber-stamped the denial of grievances."  But Defendant Russell, conversely, was the person to whom the request for a meal pass had been directed and she was the "only person who could and did decide on whether to give Mr. Brooks a special meal pass."  *Id.* at 821.  The Court does not read into *Brooks* the "sole cause" requirement advanced by Defendant Lester.

B.     Defendant Devereaux

To prevail on a claim of deliberate indifference against Sheriff Devereaux, Plaintiff must show that the Sheriff "had been personally involved in the underlying [constitutional] violation[] through [his] own participation or supervisory control."  *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018).  To succeed under a theory of supervisory control, Plaintiff must show that Sheriff Devereaux "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that . . . caused the complained of constitutional harm and acted with the state of mind required to establish the alleged constitutional deprivation."  *Id*. (internal quotation marks and citation omitted).

The Magistrate Judge found Defendant Devereaux could be found liable based both on his own participation and his supervisory control, i.e., he possessed responsibility for the continued operation of a policy at the LCDC that caused the constitutional injury at issue.  Defendant Devereaux challenges both of these findings.  The Court addresses each in turn.

### 1.     Defendant Devereaux's Own Participation

On April 25, 2019, Plaintiff submitted a Request to Staff directed to Sheriff Devereaux.  Plaintiff referenced his prior Request to Staff submitted on April 10, 2019 to Jail Administrator Lester.  Plaintiff advised Sheriff Devereaux that he had a "hole in one tooth completely to the nerve and another that was knocked loose needing to be pulled." Plaintiff stated that "[b]oth teeth are causing acute, persistent pain, for which [he] [had] been prescribed Amoxicillin and Ibuprofen" and that he would "continue to be in pain until

[he could] see a dentist." *See* Request to Staff [Doc. No. 58-18] at 7-8.  Plaintiff again stated that he was "requesting to see a dentist as soon as possible please." *Id*. at 8.

The record shows that by letter dated May 22, 2019, Sheriff Devereaux responded to Plaintiff's April 25, 2019 Request to Staff.  The Sheriff advised Plaintiff as follows:

> According to your [medical] records, you have been offered a 'nerve pain' type of medication that you did not like.  You are now being prescribed ibuprofen for discomfort.  It's my understanding this isn't an issue of infection which would be a serious concern instead of an exposed nerve.  An exposed nerve is uncomfortable but not life threatening.

Letter [Doc. No. 66-1].

The Magistrate Judge deemed the response regarding the "nerve pain" medication "simply wrong."  R&R at 18, n. 6.  The Magistrate Judge found that "Sheriff Devereaux is mistakenly referring to a medication prescribed for Mr. Bowlds' mood disorder" and that "[t]he medical records do not support a conclusion that Mr. Bowlds was offered anything other than Ibuprofen for his tooth pain."  *Id*.  And the Magistrate Judge concluded that "whether a pain-producing medical issue is life threatening or not, delaying or denying medical treatment to alleviate the pain can, itself, rise to the level of a constitutional violation." *Id*. at 18.

In his Objection, Sheriff Devereaux references Plaintiff's June 3, 2019 Grievance in which Plaintiff states:

> Sheriff Devereaux was correct in contending that I was offered a nerve pain type of medicine.  However, it wasn't that I 'did not like' the medicine that compelled me to refuse it, [b]ut rather it gave me an excruciating headache.  I've also been given an oral analgesic, entitled 'orasol gel'[.]  However, over an extended period of use the product may cause methemoglobinemia.  Ibuprofen, over an extended period of use, is known to affect the stomach lining.

*See* Grievance dated June 3, 2019 [Doc. No. 58-18 at 12-13.

The Court agrees with the Magistrate Judge that the medical records for the relevant time period show Plaintiff attributed the "excruciating headache" to the drug Trileptal, a drug prescribed for Plaintiff's mood disorder. *See* Doc. No. 61-6 at 12. The Court concurs with the finding of the Magistrate Judge that the "nerve pain" medication refused by Plaintiff was not a medication prescribed for treatment of his tooth pain. This fact, however, is not dispositive.

The dispositive inquiry is whether Sheriff Devereaux's denial of the Request to Staff demonstrates that he acted with the requisite state of mind to support a claim of deliberate indifference to Plaintiff's dental needs. "To say that an official acted with a culpable mental state means that her or she 'knew of and disregarded an excessive risk to inmate health or safety.'" *Bird v. Lampert*, 839 F. App'x 218, 223 (10th Cir. 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018)).[10]

"A prisoner may satisfy the subjective component by showing that defendant's delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition. Even a brief delay may be unconstitutional." *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (citing cases finding delays of "fifteen minutes," a "few hours" and

---

[10] As a pretrial detainee, Plaintiff's § 1983 claims for deliberate indifference are governed by the due process clause of the Fourteenth Amendment. *See Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). "Section 1983 claims made under the Fourteenth Amendment for deliberate indifference are evaluated under the same standard as section 1983 claims made under the Eighth Amendment for deliberate indifference." *Smith v. Allbaugh*, 987 F.3d 905, 910 n. 1 (10th Cir. 2021).

"several hours" as potentially unconstitutional); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under § 1983.").

Sheriff Devereaux states that prior to responding to Plaintiff's Requests to Staff, he consulted with Nurse Debra Stroud, a Turnkey Medical Staff at the facility. *See* Devereaux Decl. [Doc. No. 58-4], ¶ 14. Similar to Defendant Lester, Defendant Devereaux does not provide any details regarding that consultation such as the date on which the consultation occurred or, importantly, the content of that consultation.

At the time Sheriff Devereaux responded to Plaintiff's Request to Staff, Plaintiff had been prescribed Amoxicillin and Ibuprofen. According to Plaintiff, that treatment was ineffective and he needed to see a dentist due to his persistent pain. He was further told that regardless of his pain, he would need to complete the current treatment before further treatment would be provided. Sheriff Devereaux leaves unaddressed this "denial" of any other treatment. Also, because Sheriff Devereaux did not disclose the content of his communications with Nurse Stroud, whether she addressed the issue of Plaintiff's complaints of "persistent pain" and ineffective treatment when Sheriff Devereaux consulted with her is not apparent in the record.

Additionally, the Court finds problematic Sheriff Devereaux's characterization of Plaintiff's "exposed nerve" as "uncomfortable" but not "life threatening," as grounds for denying his grievance. As the Tenth Circuit has stated: "[w]e've not required a life-threatening condition to trigger a constitutional duty to provide adequate medical care."

*Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021).  And "we've held that guards acted with deliberate indifference by waiting two hours to treat shoulder pain even though the pain wasn't life-threatening."  *Id*.

In the subsequent Request to Staff dated June 3, 2019, Plaintiff stated that he did not want to take the Ibuprofen prescribed for his pain because "Ibuprofen, over an extended period of use, is known to affect the stomach lining.  *See* Doc. No. 58-18 at 13.  He continued to complain of "acute pain" and that "the measures that have been taken so far are merely temporary fixes to a problem that can only be resolved by a dentist visit."  *Id*.

At the time Sheriff Devereaux denied Plaintiff's Request to Staff, he understood Plaintiff had an "exposed nerve" but denied any relief on grounds the condition was not "life threatening."  As set forth, there is no requirement that a condition be life-threatening to invoke constitutional protection.

The record demonstrates disputed issues of material fact with respect to both whether the treatment offered to Plaintiff was effective to alleviate Plaintiff's pain and the degree of Plaintiff's pain.  The Court acknowledges that subsequent records show Plaintiff waited nearly six months to seek any further treatment for his dental problems.  The records further show, however, that Plaintiff's complaints of pain ultimately resulted in a referral to a dentist and a tooth extraction.  This evidence creates further issues of material fact regarding Plaintiff's complaints of pain and the effect of the delay he encountered in requesting to be seen by a dentist.  *Cf. Stack v. McCotter*, 79 F. App'x 383 (10th Cir. 2003) (holding that a seven-month delay in obtaining appropriate care involving progressive dental concerns could give rise to a cause of action for deliberate indifference); *see also*

*Brooks*, 715 F. App'x at 822 (neglect in providing dental care for several months where plaintiff suffered from a cracked tooth with "exposed nerves, resulting in great pain" "could lead a reasonable fact-finder to conclude that [the defendant] had turned a blind eye to a sufficiently serious dental condition").

### 2.  Policy at LCDC

The Magistrate Judge found sufficient evidence of Defendant Devereaux's personal participation based on a policy in place at LCDC and relied upon by "all parties involved" to "justify denying Mr. Bowlds the dental treatment that would have resolved his pain." R&R at 18.  The policy identified by the Magistrate Judge "require[ed] inmates to pay for medical bills for treatment of pre-existing conditions."  *Id.*  The Magistrate Judge found that Defendant Devereaux's "denial of Mr. Bowlds' requests to staff seeking the outside dental care that would have relieved his pain demonstrated Defendant Devereaux's personal participation in a constitutional violation." *Id.* at 19.  The Magistrate Judge further concluded that "[b]ecause Defendant Devereaux promulgated the policy requiring pre-payment of expenses incurred by providing inmates medical care for pre-existing conditions, a rational jury could conclude this policy set in motion the denial of constitutionally adequate dental care for Mr. Bowlds."  *Id.* at 21.

In objecting to the R&R, Defendant Devereaux argues that the R&R "mistakenly identifies the policy "by combining two unrelated issues."  Obj. at 3.  First, Defendant Devereaux argues the R&R improperly characterizes a statement from the Inmate Handbook that is "merely a restatement of Okla. Stat. tit. 19, § 746."  *Id.*

The pertinent statement from the Inmate Handbook provides:

Logan County Detention Center is not responsible for charges from pre-existing medical problems.

Handbook [Doc. No. 58-10] at 19.   In turn, the statutory provision referenced by Defendant Devereaux, section 746, states:

[w]hen a person is in the custody of a county jail, the custodial county shall only be liable for the cost of medical care for conditions that are not preexisting prior to arrest and that arise due to acts or omissions of the county.

Okla. Stat. tit, 19, § 746.

According to Defendant Devereaux, the statement in the Inmate Handbook "does not mean that the LCDC will only provide medical care to an inmate for a pre-existing condition if that inmate is able to pre-pay for treatment.  Rather, it means, pursuant to state statute, the LCDC can attempt to collect the cost of treatment for pre-existing conditions from the inmate subsequent to his treatment.  That policy was not in play in this case." Obj. at 3.

Defendant Devereaux further argues that "[p]ursuant to LCDC policy and its contract with TKH, the LCDC provides inmates with all medically necessary treatment regardless of their ability to pay.  The only type of medical treatment for which an inmate would be required to pre-pay would be treatment that an inmate wanted but was deemed not medically necessary by medical staff." *Id*. at 3-4.  Defendant Devereaux further states: "[t]he LCDC has never had a policy requiring an inmate to pre-pay for medical treatment related to a pre-existing condition which was deemed medically necessary." *Id*. at 4.

17

Defendant Devereaux makes this argument without citation to the record or any supporting authority.

Notwithstanding Defendant Devereaux's argument about the applicable policy and its contours, as discussed more fully infra, Plaintiff was expressly told by Defendant Lindsey that his "tooth is a pre-existing condition that neither medical nor the jail is *obligated to treat*." *See* Grievance [Doc. No. 58-18] at 12 (emphasis added). Moreover, as found by the Magistrate Judge, Plaintiff was repeatedly told that he could see a dentist, but only if he paid for the treatment. Although the treatment Plaintiff sought was deemed "not medically necessary," as set forth above, disputed issues of material fact exist with respect to the pain Plaintiff suffered and the effects of the delay in being seen by a dentist.

Notably, Sheriff Devereaux does not challenge that he was responsible for any LCDC policy at issue. Instead, in objecting to the R&R, he essentially challenges the parameters of any such policy. As set forth, the record, construed in the light most favorable to Plaintiff contains disputed issues of material fact as to the parameters of the LCDC policy followed by Defendants. Thus, the Court concurs with the Magistrate Judge's conclusion that Defendant Devereaux is not entitled to summary judgment.

### C.     Defendant Lindsey

The Magistrate Judge determined Defendant Lindsey's denial of Plaintiff's June 3, 2019 grievance did not constitute personal participation because: (1) Defendant Lindsey consulted with Turn Key medical staff and was told that any further treatment for Plaintiff's dental condition was not "medically necessary" and would be "elective in nature"; and (2) LCDC staff have no oversight or control over whether care is deemed medically necessary

or what care an inmate receives.  R&R at 15, 16.  Additionally, the Magistrate Judge determined that the record failed to indicate that Defendant Lindsey was "vested with authority to override LCDC policy regarding non-life-threatening treatment of pre-existing conditions."  *Id*. at 16-17.

In objecting to the R&R, Plaintiff argues that Defendant Lindsey did not merely deny the grievance, but investigated the matter by "consulting with Turn Key staff" and then denied final administrative relief to Plaintiff.  Plaintiff contends this was not just a "rubber-stamp denial."  Pl.'s Obj. at 4.

As referenced above, on June 3, 2019, Plaintiff submitted a Grievance to Defendant Lindsey.  *See* Grievance [Doc. No. 58-18] at 12-13.  Plaintiff stated that he had received "a nerve pain type of medicine" that gave him an "excruciating headache."  He further acknowledged that he had received an "oral analgesic" and the Ibuprofen, but that all these measures were "temporary fixes" to a problem that could only be resolved by a visit to the dentist.  *Id*. at 13.  He reiterated that he was in pain and had been since arriving at LCDC. He again requested an emergency visit to the dentist.  *Id*.

Lt. Lindsey responded to the Grievance as follows:

> Your tooth is a preexisting condition that neither medical nor the Jail is obligated to treat.  If you can afford to pay for the costs of the extraction then we will schedule and transport you to the doctor.

*Id*. at 12.  The response is undated.

The Special Report includes a Declaration from Defendant Lindsey.  In the Declaration Defendant Lindsey states:

> Prior to responding to Mr. Bowld's Offender Grievance Report Form dated June 3, 2019, I consulted with Turn Key Medical Staff, who informed me that Mr. Bowlds' dental issue was a pre-existing condition and that any treatment beyond what had already been provided was not medically necessary and would be elective in nature.

Lindsey Decl. [Doc. No. 58-8], ¶ 5.

The LCDC Inmate Handbook (Handbook) provides that "[a] grievance concerning medical or mental health issues *is forwarded directly to the health care nurse and a copy to the Detention Center*."  *See* Handbook [Doc. No. 58-10] at 14 (emphasis added).  The Handbook further provides that an inmate can "notify any staff member of a medical emergency."  *Id*. at 17.  Additionally, the Handbook provides that "[e]mergency care requested for routine problems will be referred to sick call evaluation for scheduled treatment."  *Id*. at 19.  As noted supra, with respect to "Dental Services" the Handbook provides that "[i]f necessary, teeth will be pulled . . . ."  *Id*.

The record fails to disclose that Defendant Lindsey complied with the applicable policies.  The record fails to show that he forwarded the grievance directly to the health care nurse.  And there is no record of the "consultation" that took place.  Additionally, Defendant Lindsey's response to the grievance makes no reference to any determination of "medical necessity."  Nor does the response reference Plaintiff's complaints of pain.  Instead, as set forth above, the response states that neither Turn Key *nor LCDC* had any obligation to treat Plaintiff's "pre-existing condition" and that any treatment would be conditioned on Plaintiff's ability to pay.

The Court finds disputed issues of material fact exist with respect to whether Defendant Lindsey's denial of the grievance constitutes personal participation.  The reason

for the denial of the grievance set forth in Defendant Lindsey's declaration – i.e., a determination of no medical necessity – is inconsistent with the reason set forth on the face of the grievance.  This, in and of itself, creates an issue of fact.  Moreover, the record fails to establish that Defendant Lindsey complied with the LCDC grievance procedure by forwarding the grievance directly to the health care nurse.  For all these reasons, Defendant Lindsey did not simply deny Plaintiff's grievance.  A reasonable factfinder could conclude that Defendant Lindsey took actions that directly contributed to the delay or denial of Plaintiff's dental care.  Therefore, the Court finds Defendant Lindsey is not entitled to summary judgment.

**IV.**   **Conclusion**

In sum, for the reasons set forth, the Court ADOPTS the Report and Recommendation as to Defendants Devereaux and Lester but DECLINES to ADOPT the Report and Recommendation as to Defendant Lindsey.  Defendants' Motion [Doc. No. 59] construed as a motion for summary judgment, is DENIED.

IT IS SO ORDERED this 20th day of January, 2022.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE